UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Ronald P. Donohue

    v.                                    Civil No. 08-cv-459-PB

Michael J. Ashe, Jr., Sheriff,
Hampden County, Massachusetts, et al.

**O R D E R**

Before the Court is Ronald P. Donohue's complaint (document nos. 1 & 6)[1], alleging that, during his incarceration in the Hampden County House of Corrections ("HCHOC") in Ludlow, Massachusetts, defendants violated his Eighth Amendment right to adequate medical care. The matter is before me for preliminary review to determine, among other things, whether or not the complaint states any claim upon which relief might be granted. See United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2)(A)(i); 28 U.S.C. § 1915A(a). For the reasons explained herein, I direct that this matter be

---

[1] Donohue filed his initial complaint on November 6, 2008 (document no. 1), and filed an addendum to the complaint on December 24, 2008 (document no. 6). I accept both documents, in the aggregate, as the complaint in this matter and consider both in rendering this Order.

transferred to the United States District Court for the District of Massachusetts for consideration.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.

See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Ronald Donohue has been an inmate at the New Hampshire State Prison since November 14, 2005.  Prior to that, he was incarcerated at the HCHOC.  Donohue claims that in April of 2005, during his stint at the HCHOC, he was hospitalized at the Holyoke Hospital in Massachusetts for a rapid heartbeat caused by Graves Disease, a hyperthyroid condition.  During his hospitalization, he also began treatment for hemachromatosis, a blood disease.  Donohue stayed in the hospital for six days and was then released to the HCHOC.

In June of 2005, Donohue was treated for his thyroid condition, and was started on a daily beta blocker and Coumadin, a blood thinner.  Donohue's daily medications already included Claritin for a food allergy, Nortryptilene for depression, and Flo-Max for an enlarged prostate gland.

In October of 2005, Donohue gained forty pounds very rapidly.  He also began to bruise easily and suffer from extreme lower back pain and spasms.  Donohue notified a nurse named Sue at the HCHOC who was not alarmed by his symptoms and took no

action to determine their cause.  By November 10, 2005, the pain in Donohue's back had increased, he was having difficulty urinating, and he had stopped having bowel movements.  When Donohue woke up on November 11, 2005, he could not walk.  He was taken, by wheelchair, to the HCHOC medical unit where he saw Dave, a nurse.  Dave, without any testing or examination, diagnosed the problem as a misalignment in Donohue's back causing irritation to the sciatic nerve.  Dave gave Donohue an injection of a muscle relaxer and told him to lie down and elevate his feet to ease the pain.  By later that day, the muscle relaxants ceased to work at all, and lying down increased Donohue's pain.

On November 12, 2005, Donohue was moved to a different unit within the HCHOC to await a scheduled pick-up by New Hampshire correctional authorities on November 14, 2005.  Donohue's pain continued, and he requested medical attention a number of times while on this unit, but his requests were largely denied.  Eventually, Donohue was given an injection for pain.  The following day, Donohue was again worse, and the pain medication had become ineffective.

Prior to leaving the HCHOC on November 14, 2005, Donohue requested his medical records, as he had been advised by a worker

in the HCHOC medical records department that his records would be ready for him to take with him, and that he should be sure that his records traveled with him so that he would be properly and immediately treated and given his medication upon his arrival in New Hampshire. When he requested the records, however, Donohue was told that they were not available, and that he would have to leave without them. Donohue also claims that HCHOC officials failed to otherwise notify the New Hampshire prison officials of his medical history, condition, or medications.

The New Hampshire prison officials, unaware of Donohue's condition, arrived to transport him in a car too small to allow Donohue to sit in a position that would minimize his pain. When Donohue arrived at the New Hampshire State Prison at 7:00 p.m., after a grueling three-hour car ride, no wheelchair was available for him. The medical department wouldn't admit Donohue to the infirmary as they had no medical records from the HCHOC. Donohue was placed in a two-person cell on the second floor that was not wheelchair accessible.

When Donohue saw Dr. Brett Mooney at the New Hampshire State Prison medical department, she immediately recognized that he was in ill health. His skin was turning green, he was bloated, and

he had bruises on his lower back and groin area.  Dr. Mooney had Donohue taken to the Catholic Medical Center in Manchester, New Hampshire, where he was found to be suffering from low hemoglobin and internal bleeding caused by Coumadin, the blood thinner he had been taking.  Donohue's symptoms had been caused by the collection of more than a gallon of blood in his lower back and abdomen, and largely resolved after Donohue received appropriate medical treatment at Catholic Medical Center and at the New Hampshire State Prison upon his release from the hospital.

## Discussion

I. Personal Jurisdiction

"To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'"  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002); (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 617 (1st Cir. 2001)).  "[D]ue process requires only that in order to subject a defendant to a judgment in personam . . . he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court can "exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." See Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998). General jurisdiction exists over a defendant who has maintained "continuous and systematic" contacts with the forum state, even if that activity is unrelated to the suit. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 25 (1st Cir. 2007). Here, Donohue's allegations, even construed liberally, contain no facts sufficient to support an inference that defendants have any "continuous and systematic" contacts with New Hampshire. Accordingly, I find that this Court does not have general personal jurisdiction over the defendants.

Unlike general jurisdiction, specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Negron-Torres, 478 F.3d at 24.[2] The First Circuit has established a three-part inquiry

---

[2]Generally, the exercise of specific jurisdiction over a defendant must by: (1) authorized by the state long-arm statute, and (2) compatible with the due process requirements of the United States Constitution. Harlow v. Children's Hosp., 432 F.3d

in considering a claim of specific jurisdiction: (1) relatedness; (2) purposeful availment; and (3) reasonableness. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006). The court must make "[a]n affirmative finding on each of the three elements . . . to support a finding of specific jurisdiction." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Foster-Miller, Inc. v. Babcock & Wilcox, Can., 46 F.3d 138, 145 (1st Cir. 1995). Here, Donohue has not alleged that any of the defendants engaged in any activity in New Hampshire. Donohue does allege that the defendants failed to provide him with a copy of his medical records to present to the New Hampshire prison officials upon his arrival, but that failure occurred in Massachusetts while Donohue was still at the HCHOC. All of the acts or omissions alleged to have been taken by defendants, in relation to this action or

---

50, 57 (1st Cir. 2005). This is a singular inquiry as the New Hampshire long-arm statute, N.H. Rev. Stat. Ann. § 510:4, is co-extensive with the federal constitutional limits of due process. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002) (citing, and analogizing to, Daynard, 290 F.3d at 52).

otherwise, occurred in Massachusetts.  While Donohue claims that he suffered in New Hampshire as a result of defendants' actions in Massachusetts, the in-state effect of a defendant's out-of-state conduct does not itself confer personal jurisdiction.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); Phillips Exeter, 196 F.3d at 291.

As to the second part of the inquiry into the existence of personal jurisdiction, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61.  The purposeful availment requirement inquiry is focused on voluntariness and foreseeability.  See N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). Here, where defendants are not alleged to have engaged in any activities in New Hampshire, I cannot infer any intent by the defendants to avail themselves of the privileges of conducting activities in this State.

Finally, the Court must determine whether or not the exercise of jurisdiction over an out-of-state defendant is

9

reasonable.  See Ticketmaster-N.Y. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).  Reasonableness requires the consideration of five "gestalt factors": (1) defendant's burden to appear, (2) the forum state's interest in adjudicating the dispute, (3) plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.  See Burger King, 471 U.S. at 477.  The reasonableness inquiry operates on a sliding scale that depends on the strength of the plaintiff's showing of relatedness and purposeful availment.  See Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).  Where the plaintiff has made a weak showing on relatedness and purposeful availment, the gestalt factors may tip the balance against the exercise of personal jurisdiction.  See Nowak v. Tak How Invs., 94 F.3d 708, 717 (1st Cir. 1996).

   Here, in addition to the fact that plaintiff has not shown that defendants engaged in actions in the forum state at all, and has therefore not made a sufficient showing to satisfy the first two parts of the specific jurisdiction inquiry, the facts alleged, taken as a whole, do not warrant a finding that

exercising personal jurisdiction over these defendants would be reasonable.  It would not be unduly burdensome for Massachusetts defendants to appear in a New Hampshire case, and New Hampshire is certainly a more convenient forum for Donohue, who is incarcerated here.  And while this State, like all others, has an interest in assuring that prisoners are treated with constitutionally adequate medical care, particularly prisoners who may be transferred to the New Hampshire Department of Corrections in poor health due to the lack of proper medical care elsewhere, I find that the courts of Massachusetts have a superior interest in adjudicating claims arising out of acts or omissions in correctional facilities located there.  While some of the reasonableness factors weigh in favor of the exercise of personal jurisdiction in this matter, taken together, they do not.  I find that the weight of authority, as applied to the facts of this case, counsel against my exercise of this Court's personal jurisdiction over the defendants in this matter.

II. <u>Transfer</u>

Under 28 U.S.C. § 1631, a civil action that is filed in a court without jurisdiction to consider the matter may be transferred to a court where the action could have properly been

brought at the time it was filed.[3]  See Cimon v. Gaffney, 41 F.3d 1, 7 n.21 (1st Cir. 2005) (supporting the view that § 1631 authorizes transfers to allay any jurisdictional defect after collecting conflicting authorities on the question of whether § 1631 authorizes transfers to cure a want of personal jurisdiction, as opposed to a want of subject-matter jurisdiction).  I find that this matter could properly have been filed in the United States District Court for the District of Massachusetts, which possesses personal jurisdiction over the

---

[3] 28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

defendants, and I direct, therefore, that this case be transferred to the District of Massachusetts for consideration.

**SO ORDERED.**

                                                    James R. Muirhead
                                                  United States Magistrate Judge

Date:     February 19, 2009

cc:      Ronald P. Donohue, pro se